Caldwell, J.
This caqse comes into this court on a writ of error to the common pleas of Lucas county. The suit in the court below was an action of assumpsit, brought by Elias S. Johnson against the steamboat John Owen, on the following bill of lading :
“ Toledo, Ohio, Sept. 30, 1850.
“ Shipped in good order by E. S. Johnson on board the steamer John Owen, Davis, master, bound for Detroit, the following articles, which are to be delivered in like good order (damages of navigation only excepted) unto the consignee or assigns as marked and numbered in the margin.
“ In witness whereof, the master hath signed bills of lading of this tenor and date.
“ John Chester & Co., Detroit, 94 bbls. mess pork, subject to the payment of $1,665 to the clerk of John Owen for E. S. J.
(Signed,) “John Henderson.”
*The pork referred to in the bill of lading had been sold by Johnson to John Chester & Co., the consignees. Henderson, who signed the bill of lading, was the clerk of the boat. The pork was taken by the boat and delivered to the consignees, John Chester & Co., without receiving the $1,665 provided for in the bill of •lading. Some of the meat turned out to be of an inferior quality to that contracted for; Chester & Co. made several payments on it. to Johnson, but a part of the purchase money, as he claimed, remaining unpaid, he brought this suit against the boat to recover the balance, claiming that the boat washable on account of having delivered the meat contrary to the stipulation contained in the bill of lading, that the delivery was to be subject to the payment of $1,665.
The cause on the trial in the court of common pleas was submitted to the court. After the plaintiff had closed his evidence,, the defendant moved for a nonsuit, which the court overruled, and, after hearing the defendant’s testimony, gave judgment for the’ plaintiff. The defendant moved for a n'ew trial, which motion was *126 •overruled, and the defendant took a bill of exceptions, on which a number of errors have been assigned.
It is first alleged that the court erred in sustaining the suit of the plaintiff, on the ground that the statute authorizing proceedings •against steamboats and other water-craft by name (under which this suit was brought) is unconstitutional. This question was decided at this term in the case of Isaac P. Thompson v. The Steamboat Julius D. Morton, in which the law is held to be constitutional and valid. It is said, however, that the claim of the plaintiff does not come within the intent of the statute, that the provision in the bill of lading, relating to the payment of the money, does not form a part of the contract for the transportation of property, but is outside ■of that contract, and that therefore the boat is not liable. Docs this condition in the bill of lading then come within the legitimate scope of the business of a common carrier in the transportation of goods? In all cases *where goods are directed to a consignee, it is of vital importance that they should be delivered to the person entitled to receive them; this is the great object to be accomplished by their transportation. The business of the common carrier is not performed by merely carrying them to the locality of their destination; the actual delivery of the goods to the person designated, is as important and binding a part of his contract as any other.
Nor do we see why the contract should be less binding because the delivery to the consignee was subject to a condition. No doubt, when this property was shipped, it was the expectation of all parties concerned that Chester & Co. would receive it: still they were only to receive it, were only consignees, on condition. In many instances where goods are shipped, the person to whom the goods are to be delivered is not designated, is not known either to the common carrier or to the shipper ; in all those cases it becomes the duty of the common carrier to see that the goods are delivered to the person •entitled to receive them, by the future direction of the shipper. The doctrine of conditional consignments and the liability of the master of a vessel in reference to them, is discussed in Abbot on Shipping, pages 330-332. In treating on the subject, the author says : “ It thus appears that the mere shipment of goods does not' always vest the property of them in the consignee, though he be a purchaser. Bills of lading for delivery to the order of the •shipper, or to-or order or assigns, convey notice to the *127 ■master, that although the goods be shipped on account and risk of a consignee, and delivery to him be the object and intention of the ¡shipment, there may yet be some condition unperformed on which his right to possession depends, or some circumstances which have induced the shipper to retain in his own hands the ultimate appointment of the consignment. It is the master’s duty, in such cases, to retain, and he can not safely deliver the goods until they are claimed of him by the holder of a bill of lading, indorsed by the shipper, to whose order he has engaged to deliver them.” If, in a case of the kind here supposed, the master would be Abound from mere inference to withhold the delivery, much more would he be bound to withhold where the delivery depended on an expressed condition, and that condition had not been performed. The same author, in speaking further on the subject, says: “ In considering to whom he will be safe in making and in refusing delivery, it may be useful to remind the master that he can rarely incur any responsibility, by adhering strictly to his engagement with the shipper.” We regard the consignment in this case as a conditional one, the condition not being unreasonable, nor out of the ordinary course of business ; and think it was binding on the boat as an important part of the contract of shipment. It is said, however, that the sum of $1,665 was too large, more than was coming to Johnson on the shipment. But if we are right in holding this to be a conditional consignment, that, as we think, would make no difference; it would bo a matter between Johnson and Chester & Co.; the boat had no interest in it; she had merely to see that the condition was complied with before she delivered the property. It did not make any difference so far as the boat was concerned, whether the sum of money required to be paid related at all to the price to be paid for the property, nor did it make any difference that it was to be paid to the clerk of the boat. It would have been the same in effect if the contract had been that it should be paid to any other person. The shipper had a right to make the condition, and the boat having taken the property with such condition was bound not to deliver the property unless it was performed, and having failed in this particular to comply with the agreement, is liable for all the damages to Johnson arising from such breach of contract.
The principle that a vessel is liable on a contract like the one *128 existing in this case, is clearly decided in the case of the Schooner Argyle v. George Worthington, 17 Ohio, 460.
Upon an examination of all the facts in this case, the court are-of opinion that the court of common pleas was warranted in rendering the judgment which it did ; that judgment will therefore beaffirmed.